

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

───────────────────────

No. 02-24-00099-CV

───────────────────────

IN THE INTEREST OF S.D., A CHILD

───────────────────────────────────────────

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-729460-23

───────────────────────────────────────────

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

This is an ultra-accelerated appeal[1] in which Appellant M.D. (Father) appeals the termination of his parental rights to his daughter, S.D.,[2] following a bench trial. Father's court-appointed appellate counsel filed an *Anders* brief averring that after diligently reviewing the record, he believes that the appeal is frivolous because even though the evidence is allegedly factually insufficient to support termination under Family Code Section 161.001(b)(1)(D), the record contains sufficient evidence to support termination under Subsections (E) and (N).[3] *See Anders v. California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967); *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.) (reasoning that *Anders* procedures apply in noncriminal appeals when appointment of counsel is mandated by statute). Although the brief requests modification of the termination order to delete the trial court's Subsection (D) finding, it nevertheless meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[2]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use an alias to refer to a minor in an appeal from a judgment terminating parental rights); *see also* Tex. R. App. P. 9.8(a) (defining "alias" to include "one or more of a person's initials or a fictitious name").

[3]*See In re E.P.C.*, 381 S.W.3d 670, 684 n.3 (Tex. App.—Fort Worth 2012, no pet.) (explaining that a finding of only one Family Code Section 161.001(b)(1) termination ground—along with a best-interest finding—is sufficient to support a judgment terminating a parent's rights).

grounds for reversal to be advanced on appeal. *See Mitchell v. State*, 653 S.W.3d 295, 297 (Tex. App.—Texarkana 2022, no pet.) ("[A]ppellate courts are authorized to reform judgments and affirm as modified in *Anders* cases involving non-reversible error."); *cf. R.J.O. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-13-00478-CV, 2013 WL 6060778, at *1 (Tex. App.—Austin Nov. 13, 2013, no pet.) (mem. op.) (reforming trial court's final decree to remove a statutory termination ground and affirming judgment, as modified, in *Anders* case). Father did not file a response despite being given the opportunity to do so. The Department filed a letter brief stating that although it generally agreed with the *Anders* brief, it opposed Father's counsel's request to modify the termination order by deleting the Subsection (D) finding.

As the reviewing appellate court, we must independently examine the record to decide whether an attorney is correct in determining that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *In re K.R.C.*, 346 S.W.3d 618, 619 (Tex. App.—El Paso 2009, no pet.). Having carefully reviewed the record and the *Anders* brief, we agree that Father's appeal is frivolous. We find nothing in the record that might arguably warrant reversal of the trial court's termination order. *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005).

Further, we conclude that the evidence is factually sufficient to support termination under Subsection (D) and therefore deny Father's counsel's request to modify the trial court's order. Subsection (D) provides that a trial court may order parental rights terminated if it finds by clear and convincing evidence that the parent

3

has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(D). As used in the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment under Subsection (D) arises from the child's environment, but a parent's conduct can contribute to an endangering environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see J.G. v. Tex. Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 524 (Tex. App.—Austin 2019, no pet.). "A single act or omission can support termination under [S]ubsection (D) . . . ." *J.G.*, 592 S.W.3d at 524. Evidence of the following can support the conclusion that a child's surroundings endanger her physical or emotional well-being for purposes of Subsection (D): a parent's drug use,[4] a parent's allowing a child to be around another person—including another parent—who is using drugs or participating in unlawful conduct,[5] a parent's knowledge of the other parent's drug use during pregnancy and

---

[4]*See E.G. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00469-CV, 2022 WL 17970222, at *8 (Tex. App.—Austin Dec. 28, 2022, no pet.) (mem. op.).

[5]*See In re B.U.*, 02-23-00150-CV, 2023 WL 5967604, at *4 (Tex. App.—Fort Worth Sept. 14, 2023, pet. denied) (mem. op.) ("[A] parent's choice to continue relationships with people who abuse illegal drugs may constitute evidence of endangerment [under Subsection (D)]." (citing *In re K.W.*, No. 09-19-00442-CV, 2020 WL 1755985, at *8 (Tex. App.—Beaumont Apr. 9, 2020, pet. denied))); *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) ("Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home under [Subsection (D)].").

corresponding failure to attempt to protect the unborn child from the effects of that drug use,[6] a parent's imprisonment or intentional activity that exposes the parent to potential incarceration,[7] or a parent's mental instability or untreated mental illness.[8]

Here, the record reflects that

- S.D. tested positive for methamphetamine and marijuana when she was born, and S.D.'s mother (Mother) admitted to using methamphetamine and amphetamines during her pregnancy.

- Rayshon Jones, the permanency specialist assigned to S.D.'s case, testified that she believed that Father and Mother were a couple and lived together prior to S.D.'s removal.

- Although Father denied having lived with Mother, he testified that he had "spent nights with her" and that he had learned that Mother was pregnant when she was about six or seven months along.

- Father and his sister told Jones that they knew that Mother was not going to stop using drugs.

- Father has a lengthy criminal history, including four convictions for possessing methamphetamine; has been in and out of prison; and was incarcerated at the time of trial.

---

[6] *See In re J.W.*, 645 S.W.3d 726, 749–50 (Tex. 2022).

[7] *See Boyd*, 727 S.W.2d at 533; *D.N. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00658-CV, 2016 WL 1407808, at *2 (Tex. App.—Austin Apr. 8, 2016, no pet.) (mem. op.).

[8] *See T.A.W. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-20-00364-CV, 2021 WL 81866, at *4 (Tex. App.—Austin Jan. 8, 2021, pet. denied) (mem. op.) (mental instability); *In re L.L.F.*, No. 02-11-00485-CV, 2012 WL 2923291, at *15 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.) (untreated mental illness); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (noncompliance with mental health medication).

- Although Father denied having a drug problem, he acknowledged that he had multiple "drug charges" and could have been considered to have had a drug problem in the past.

- Father testified that he had traded drugs to "[c]ustomers" for old, broken electronics but denied that he had supplied Mother with her methamphetamine.

- Father was prescribed medication for anxiety/depression and post-traumatic stress disorder, but he stopped taking his medication in 2003 because he "felt like [he] didn't need it." He resumed taking his medication in 2007 before stopping again in 2021 because he could not pay for it and was "[j]ust being irresponsible."

- Father admitted to self-medicating with methamphetamine.

Giving due deference to the trial court's findings, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006), we conclude that based on this evidence, the trial court could reasonably have formed a firm conviction or belief that Father had endangered S.D. by placing her—or by allowing her to remain—in a dangerous environment, *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(D). Thus, the evidence is factually sufficient to support the trial court's Subsection (D) finding. *See C.H.*, 89 S.W.3d at 18–19. Accordingly, we deny Father's counsel's request to modify the termination order by deleting the Subsection (D) finding, and we affirm the order as-is.

Father's counsel remains appointed in this case through proceedings in the Texas Supreme Court unless otherwise relieved from his duties for good cause in accordance with Family Code Section 107.016(2)(C). *See In re P.M.*, 520 S.W.3d 24,

27–28 (Tex. 2016) (order); *see also* Tex. Fam. Code Ann. § 107.016(2)(C).

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  July 11, 2024